PREET BHARARA
United States Attorney for the
Southern District of New York
By:    REBECCA C. MARTIN
         CHRISTINE S. POSCABLO
Assistant United States Attorneys
86 Chambers Street
New York, New York 10007
Tel.:   (212) 637-2714/2672
Fax:   (212) 637-2686/2702
E-mail: rebecca.martin@usdoj.gov
         christine.poscablo@usdoj.gov



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
UNITED STATES OF AMERICA ex rel. DAN BISK,
STATE OF NEW YORK ex rel. DAN BISK,

                  Plaintiffs,

             -against-

WESTCHESTER MEDICAL CENTER,
WESTCHESTER COUNTY HEALTH CARE
CORPORATION, et al.,

                  Defendants.
-------------------------------------------------------------x
UNITED STATES OF AMERICA,

                  Plaintiff-Intervenor,

             -against-

WESTCHESTER COUNTY HEALTH CARE
CORPORATION d/b/a WESTCHESTER MEDICAL
CENTER,

                  Defendant.
-------------------------------------------------------------x

**STIPULATION AND ORDER OF SETTLEMENT AND DISMISSAL**

06 Civ. 15296 (LAK)

        WHEREAS, this Stipulation and Order of Settlement and Dismissal (the "Stipulation") is entered into by and among the United States of America (the "United States"), by its attorney

Preet Bharara, United States Attorney for the Southern District of New York, defendant Westchester County Health Care Corporation d/b/a Westchester Medical Center ("WMC") and Relator,[1] through their authorized representatives (collectively, the "Parties");

WHEREAS, WMC is a public benefit corporation, operating a tertiary and quaternary care hospital, located in Valhalla, New York, and serves as the primary clinical affiliate of New York Medical College;

WHEREAS, WMC offered management and administrative services to physician practices through Matrix Resources, L.L.C. ("Matrix"), which was a wholly-owned subsidiary of WMC's for-profit holding company, WCHCC Holdings, Inc., which changed its name to Northeast Provider Solutions, Inc. ("NEPS") in May 2014.

WHEREAS, on or about December 19, 2006, Relator filed a complaint in the above-referenced action against WMC, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b), on behalf of the United States, and which was most recently amended by Relator on December 4, 2007 ("Relator's Complaint");

WHEREAS, in May 2015, the United States intervened in the action and filed a complaint-in-intervention ("United States Complaint-in-Intervention") against WMC, contending that (i) from January 1, 2001 through December 31, 2007, the financial relationships between WMC, including Matrix, and Cardiology Consultants of Westchester, P.C. ("CCW") violated the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), and the Stark Law, 42 U.S.C. § 1395nn *et seq.*, and that WMC's submission of claims to the Medicare Program for services

---

[1] Dan Bisk filed this *qui tam* complaint as the relator, John Doe. Mr. Bisk died in December 2009. Pursuant to the Decree Granting Administration entered by the Surrogate's Court of the State of New York on February 2, 2010, Mr. Bisk's wife, Chris Carrs, was appointed to be the administrator of Mr. Bisk's estate and thus has the authority to enter into this Stipulation and Order of Settlement and Dismissal of behalf of Mr. Bisk's estate.

rendered to patients referred to WMC by CCW's shareholder physicians violated the federal False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA"); and (ii) for the cost reports WMC filed for calendar years ended December 31, 2000 through December 31, 2007 with the Health Care Financing Administration ("HCFA"), and later the Centers for Medicare and Medicaid Services ("CMS"), WMC sought and obtained reimbursement for Direct Graduate Medical Education ("DGME") and Indirect Medical Education ("IME") costs corresponding to time spent by certain residents and fellows at other hospitals or at non-hospital settings, even though WMC did not incur all or substantially all of the costs associated with these fellows or residents, or otherwise meet all applicable HCFA/CMS regulatory requirements as set forth initially at 42 C.F.R. § 413.86 and later at 42 C.F.R. § 413.78. The conduct described in this Paragraph, and the conduct more specifically described in Paragraph 2 below and in the United States Complaint-in-Intervention, are defined as the "Covered Conduct" below;

WHEREAS, the United States alleges that WMC is liable for damages and civil penalties for the Covered Conduct under the FCA;

WHEREAS, in consideration of the mutual promises and obligations of this Stipulation, the Parties have reached a full and final, mutually agreeable resolution of all claims asserted in Relator's Complaint and the United States Complaint-in-Intervention;

NOW, THEREFORE, upon the Parties' agreement, IT IS HEREBY ORDERED that:

1. WMC consents to this Court's exercise of personal jurisdiction over it.

2. WMC admits, acknowledges and accepts responsibility for the facts set forth below. Except as otherwise indicated below, the relevant timeframe for these facts is January 1, 2001 through December 31, 2007 (the "relevant timeframe").

**Background.** WMC operates a tertiary and quaternary care hospital located in Valhalla, New York. The hospital serves as the primary clinical affiliate of New York Medical College ("NYMC"), a State-chartered medical school located on the same Valhalla

campus as WMC. Pursuant to the long-standing clinical and academic affiliation between WMC and NYMC, NYMC faculty were generally required to obtain medical staff privileges at WMC during the relevant timeframe.

During the relevant timeframe, CCW was a cardiology practice that operated on the WMC Valhalla campus. CCW operated a private practice and also operated as the academic and clinical cardiology division of both NYMC and WMC. The physician owners and employees of CCW during the relevant timeframe served on the clinical faculty of WMC. During the relevant timeframe, CCW referred hundreds of patients to WMC and was a significant referral source for WMC.

**Kingston Practice Arrangement.** Through its practice management affiliate, Matrix, and effective as of July 1, 2001, WMC entered into a management agreement (the "Matrix Agreement") with CCW. Through Matrix, WMC agreed to assist CCW in establishing and developing a medical office located in Kingston, New York with the objective of expanding WMC's referral base and service area to the upper reaches of the Hudson Valley.

Pursuant to the terms of the Matrix Agreement, which had an initial term of three years, Matrix agreed to provide certain management services for CCW's Kingston office and to advance working capital to establish and operate the office. Between 2001 and 2002, WMC, through Matrix, advanced to CCW approximately $450,000 to pay for certain costs of the practice, including payment of the monthly management fee due under the Matrix Agreement. The Matrix Agreement provided that CCW would repay the advances at a rate of 8.5% interest by the end of the three-year term, with a proviso that the Matrix Agreement could be extended for one year if full repayment had not been made.

In or around July 2002, CCW and WMC began discussions regarding the termination of the Matrix Agreement. At the outset of these discussions, WMC received a memorandum from CCW requesting that WMC, among other things, postpone or eliminate certain interest payments, reduce the applicable interest rate to the then-market rate of 6.5%, and extend the repayment period in recognition of CCW's efforts in developing clinical volume at the Kingston Practice and the resulting referral benefit to WMC.

As of April 25, 2003, CCW and WMC executed a promissory note and associated letter agreement providing for immediate termination of the Matrix Agreement and repayment of the then-outstanding Matrix working capital advances over five years at an initial interest rate of 4.75% (subject to periodic adjustment based upon changes in the prime rate), beginning with an initial repayment of $116,936.15 on April 28, 2003.

In addition, on April 25, 2003, three days prior to CCW's initial repayment of the advance, WMC and CCW entered into a two-year consulting agreement, retroactive to July 2, 2002. Pursuant to this agreement, CCW was to provide various consulting services to WMC for an annual amount of $50,000. In April 2004, the contract was amended and extended. Between April 2003 and July 2005, WMC paid CCW approximately $190,000 under the original and amended consulting services agreement. WMC was not able to locate evidence that CCW performed the contracted services under

this agreement. During the time frame of approximately April 2003 through July 2005, CCW referred patients for hundreds of medical procedures at WMC.

**Fellows.** For certain years during the relevant timeframe, WMC charged various physician practices for a portion of the salaries and expenses relating to residents and fellows who trained at WMC. During the relevant timeframe, fellows in WMC's cardiology fellowship program performed certain services within CCW's private offices as part of their regular clinical rotation. Prior to 2003, CCW paid hundreds of thousands of dollars to WMC for the salaries and expenses relating to cardiology fellows. Beginning in or around 2003, however, CCW ceased paying the fellowship charges for which it was invoiced by WMC; after continuing to bill CCW, but failing to compel payment, WMC wrote off these amounts as uncollectible in April 2007.

**Cost Report Reimbursement.** For calendar years ended December 31, 2000 through December 31, 2007 ("relevant cost report timeframe"), WMC submitted annual Medicare cost reports to HCFA, and later CMS, reflecting certain costs, referred to as DGME and IME, associated with its residency and fellowship programs. Pursuant to certain HCFA/CMS regulations applicable to the DGME and IME lines of Medicare cost reports in effect during the relevant cost report timeframe, hospitals were permitted to claim reimbursement for time spent by the residents or fellows at other hospitals and non-hospital settings only if the hospital incurred all or substantially all of the salary and fringe benefit expense of the residents and fellows being rotated through other hospitals or non-hospital settings and complied with other applicable regulatory requirements. For the relevant cost report timeframe, WMC included certain costs in its filed cost reports that corresponded to time spent by certain residents and fellows at other hospitals or at non-hospital settings, but did not incur all or substantially all of the costs associated with these fellows and residents, or otherwise did not meet applicable HCFA/CMS regulatory requirements.

3. WMC shall pay to the United States EIGHTEEN MILLION, EIGHT HUNDRED THOUSAND ($18,800,000) (the "Settlement Amount") no later than ten days after the Effective Date (as defined below in Paragraph 26) of this Stipulation by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Southern District of New York.

4. In the event the Settlement Amount is not paid in full in accordance with the terms set forth in Paragraph 3 above, WMC agrees to the entry of a Consent Judgment (the form of which is attached hereto as Exhibit A). Additionally, the United States, at its option, also may: (a) rescind this Stipulation and reinstate the United States Complaint-in-Intervention filed in this action as to WMC or seek specific performance of this Stipulation; (b) offset the

remaining unpaid balance from any amounts due and owing WMC by any department, agency or agent of the United States at the time of default; or (c) exercise any other rights granted by law, or under the terms of this Stipulation, or recognizable at common law or in equity. In the event that the United States opts to rescind this Stipulation pursuant to this Paragraph, WMC shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that relate to the Covered Conduct, except to the extent such defenses were available on the Effective Date. In the event the Settlement Amount is not paid in full, WMC shall not contest any offset imposed or any collection action undertaken by the United States pursuant to this Paragraph, either administratively or in any court. In addition, in the event the Settlement Amount is not paid in full, WMC shall pay to the United States all reasonable costs of collection and enforcement under this Paragraph, including attorney's fees and expenses. In the event that the United States opts to seek specific performance of this Stipulation, interest shall accrue at the rate of 9% per annum compounded annually on the payment that is due under Paragraph 3 above, such interest to commence accruing as of the date therein stated.

5. Subject to the exceptions in Paragraph 6 below (concerning excluded claims), conditioned upon WMC's full payment of the Settlement Amount pursuant to Paragraph 3, the United States, on behalf of itself, its officers, agencies and departments, releases WMC and all of its predecessors and successors, together with all of its current and former officers, directors, trustees, agents, employees, servants and assigns, as well as its subsidiaries Matrix and NEPS, from any civil or administrative monetary claim the United States has for the Covered Conduct under the FCA; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801, *et seq.*; the Anti-Kickback Statute, 42 U.S.C. §1320a-7b(b); the Stark Law, 42 U.S.C. §1395nn *et seq.*; and the common law or equitable theories of

payment by mistake, unjust enrichment, and fraud.

6. Notwithstanding the releases given in Paragraph 5 of this Stipulation, or any other term of this Stipulation, the following claims of the United States are specifically reserved and are not released by this Stipulation:

    a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b. Any criminal liability;

    c. Except as expressly stated in this Stipulation, any administrative liability, including mandatory and permissive exclusion from Federal health care programs;

    d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct; and

    e. Any liability based on obligations created by this Stipulation.

7. WMC fully and finally releases the United States, and its agencies, officers, employees, servants, and agents from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that WMC has asserted, could have asserted, or may assert in the future against the United States, and its agencies, officers, employees, servants, and agents, related to the Covered Conduct and the United States' investigation and prosecution thereof.

8. WMC waives and shall not assert any defenses that it may have to any federal criminal prosecution or federal administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Stipulation bars a remedy sought in such federal criminal prosecution or federal administrative action. Nothing in this Paragraph or any other provision of this Stipulation constitutes an agreement by the United States concerning the characterization of the

Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

9. Subject to full payment of the Settlement Amount, Relator's estate for itself and Relator's heirs, successors, attorneys, agents, and assigns, releases WMC and all of its predecessors and successors, together with all of its current and former officers, directors, trustees, servants, employees, agents, subsidiaries (including without limitation Matrix), affiliates, and assigns, from any claims the Relator or Relator's estate has asserted, could have asserted, or may assert in the future for any reason for any acts or omissions, including but not limited to claims on behalf of the United States for or relating to the Covered Conduct under the FCA; provided, however, that nothing in this Stipulation shall preclude Relator's estate from seeking to recover its expenses, costs or attorneys' fees from WMC, pursuant to 31 U.S.C. § 3730(d).

10. In consideration of the execution of this Stipulation on Relator's behalf, the dismissal of the Relator's Complaint with prejudice as set forth in Paragraph 19 below, and the releases of the Relator's estate as set forth in Paragraph 9 above, WMC releases Relator's estate and Relator's heirs, attorneys, agents, successors, and assigns from any and all claims for any action, event, or conduct, known or unknown.

11. Relator's estate and Relator's heirs, successors, attorneys, agents, and assigns shall not object to this Stipulation, and agree and confirm that this Stipulation is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Subject to any claims that Relator's estate may have under 31 U.S.C. § 3730(d) for its share of the Settlement Amount, as set forth above in Paragraph 3, pursuant to the Stipulation and Order of Settlement and Release between Relator and the United States, Relator's estate, for itself individually, and for Relator's heirs, successors, attorneys, agents, and assigns, releases, waives,

and forever discharges the United States, its agencies, officers, employees, servants, and agents, from any claims, known or unknown, arising from the filing of the Relator's Complaint and from any claims under 31 U.S.C. § 3730.

12. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier) or any state payer, related to the Covered Conduct; and WMC agrees not to resubmit to any Medicare contractor or any state payer any previously denied claims related to the Covered Conduct, and agrees not to appeal any such denials of claims.

13. WMC agrees to the following:

   a. Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of WMC, its present or former officers, directors, employees, members, and agents in connection with:

   (1) the matters covered by this Stipulation;

   (2) the United States' civil investigation of the Covered Conduct;

   (3) the investigation, defense, and corrective actions undertaken by WMC in response to the United States' civil investigation of the Covered Conduct (including attorney's fees);

   (4) the negotiation and performance of this Stipulation;

   (5) the payments WMC makes to the United States pursuant to this Stipulation,

including costs and attorney's fees; and

(6) the negotiation of, and obligations undertaken pursuant to any CIA to:

    (i) retain an independent review organization to perform annual reviews as described in Section III of any CIA; and

    (ii) prepare and submit reports to the HHS-OIG

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs). However, nothing in Paragraph 13.a.(6) that may apply to the obligations undertaken pursuant to any CIA affects the status of costs that are not allowable based on any other authority applicable to WMC.

b. <u>Future Treatment of Unallowable Costs</u>: Unallowable Costs shall be separately determined and accounted for by WMC, and WMC shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by WMC or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

c. <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: WMC further agrees that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program,

including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by WMC or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. WMC agrees that the United States, at a minimum, shall be entitled to recoup from WMC any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment. Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by WMC or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on WMC or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

d. Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine WMC's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

14. WMC warrants that it has reviewed its financial situation and that it currently is solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall remain solvent following payment to the United States of the Settlement Amount. Further, the Parties warrant that, in evaluating whether to execute this Stipulation, they (a) have intended that the

mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to WMC, within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which WMC was or became indebted on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

15. If within 91 days of the Effective Date or of any payment made under this Stipulation, WMC commences any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of WMC's debts, or seeking to adjudicate WMC as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for WMC or for all or any substantial part of its assets, WMC agrees as follows:

    a. WMC's obligations under this Stipulation may not be avoided pursuant to 11 U.S.C. § 547, and WMC shall not argue or otherwise take the position in any such case, proceeding, or action that: (*i*) WMC's obligations under this Stipulation may be avoided under 11 U.S.C. § 547; (*ii*) WMC was insolvent at the time this Stipulation was entered into, or became insolvent as a result of the payments made to the United States; or (*iii*) the mutual promises, covenants, and obligations set forth in this Stipulation do not constitute a contemporaneous exchange for new value given to WMC.

    b. If WMC's obligations under this Stipulation are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the United States, at its sole option, may

rescind the releases in this Stipulation and bring any civil and/or administrative claim, action, or proceeding against WMC for the claims that would otherwise be covered by the releases provided in Paragraph 5 above. WMC agree that (*i*) any such claims, actions, or proceedings brought by the United States are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceedings described in the first clause of this paragraph, and WMC shall not argue or otherwise contend that the United States' claims, actions, or proceedings are subject to an automatic stay; (*ii*) WMC shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceeding that are brought by the United States within 60 calendar days of written notification to WMC that the releases have been rescinded pursuant to this paragraph; and (*iii*) the United States has a valid claim against WMC in the amount of eighteen million eight hundred thousand dollars ($18,800,000.00), and the United States may pursue its claim in the case, action, or proceeding referenced in the first clause of this paragraph, as well as in any other case, action, or proceeding.

   c. WMC acknowledges that its agreements in this paragraph are provided in exchange for valuable consideration provided in this Stipulation.

16. Except as expressly provided to the contrary in this Stipulation, this Stipulation is intended to be for the benefit of the Parties only. The Parties do not release any claims they may have against any other person or entity, except as provided herein.

17. WMC agrees that it waives and shall not seek payment for any of the health care billings covered by this Stipulation from any health care beneficiaries or their parents, sponsors,

legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

18. This Stipulation is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Stipulation is the United States District Court for the Southern District of New York. For purposes of construing this Stipulation, it shall be deemed to have been drafted by all Parties and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

19. Subject to the exceptions set forth in this Stipulation, and in consideration of the obligations of WMC as set forth in this Stipulation, and conditioned upon WMC's full compliance with the terms of this Stipulation, including full payment of the Settlement Amount in accordance with Paragraph 3, the United States shall dismiss with prejudice the claims against WMC in the United States Complaint-in-Intervention and the Relator's estate shall dismiss with prejudice the Relator's Complaint.

20. The United States and WMC shall each bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Stipulation.

21. The undersigned counsel and other signatories represent and warrant that they are fully authorized to execute this Stipulation on behalf of the persons and entities indicated below.

22. This Stipulation may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Stipulation. Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Stipulation.

23. This Stipulation is binding on WMC's successors, transferees, heirs, and assigns.

24. This Stipulation is binding on Relator's successors, transferees, heirs, and assigns.

25. Any notice pursuant to this Stipulation shall be in writing and shall, unless expressly provided otherwise herein, be delivered by express courier and by e-mail transmission,

followed by postage-prepaid mail, to the following representatives:

<u>To the United States</u>:

Rebecca C. Martin
Christine S. Poscablo
Assistant United States Attorneys
United States Attorney's Office, Southern District of New York
86 Chambers Street, 3rd Floor
New York, NY 10007
E-mail:   rebecca.martin@usdoj.gov
          christine.poscablo@usdoj.gov

<u>To WMC</u>:

Stephen A. Warnke
Brett R. Friedman
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
E-mail:   stephen.warnke@ropesgray.com
          brett.friedman@ropesgray.com

<u>To the Relator's Estate</u>:

Robert W. Sadowski
Andrea Fischer
Raphael Katz
Sadowski Fischer PLLC
39 Broadway, Suite 1540
New York, New York 10006
Email:    rsadowski@sflawgroup.com
          afischer@sflawgroup.com
          rkatz@sflawgroup.com

26.  The effective date of this Stipulation is the date upon which this Stipulation is entered by the Court (the "Effective Date").

27.  This Stipulation constitutes the complete agreement between the Parties. This Stipulation may not be amended except by written consent of the Parties.

For the United States:

Dated: New York, New York
May 13, 2015

PREET BHARARA
United States Attorney for the
Southern District of New York

By: _____
REBECCA C. MARTIN
CHRISTINE S. POSCABLO
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007

For the Relator:

Dated: New York, New York
May 13, 2015

SADOWSKI FISCHER PLLC

_____
ROBERT W. SADOWSKI, Esq.
ANDREA FISCHER, Esq.
RAPHAEL KATZ, Esq.
39 Broadway, Suite 1540
New York, New York 10006

For WMC:

Dated: New York, New York
May 13, 2015

Ropes & Gray LLP

By: _____
STEPHEN A. WARNKE, Esq.
BRETT R. FRIEDMAN, Esq.
1211 Avenue of the Americas
New York, New York 10036-8704

WMC

By: _____
JULIE SWITZER
Executive Vice President and
General Counsel

SO ORDERED:

_____
HONORABLE LEWIS A. KAPLAN
UNITED STATES DISTRICT JUDGE

*For the United States*:

Dated: New York, New York
May 13, 2015

PREET BHARARA
United States Attorney for the
Southern District of New York

By: _____
REBECCA C. MARTIN
CHRISTINE S. POSCABLO
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007

*For WMC*:

Dated:   New York, New York
May 13, 2015

Ropes & Gray LLP

By: _____
STEPHEN A. WARNKE, Esq.
BRETT R. FRIEDMAN, Esq.
1211 Avenue of the Americas
New York, New York 10036-8704

WMC

By: _____
JULIE SWITZER
Executive Vice President and
General Counsel

*For the Relator:*

Dated: New York, New York
May 13, 2015

SADOWSKI FISCHER PLLC

_____
ROBERT W. SADOWSKI, Esq.
ANDREA FISCHER, Esq.
RAPHAEL KATZ, Esq.
39 Broadway, Suite 1540
New York, New York 10006

SO ORDERED:

_____
HONORABLE LEWIS A. KAPLAN
UNITED STATES DISTRICT JUDGE

9/14/15